# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 28, 2015 at Knoxville

## JASON CHRISTOPHER UNDERWOOD v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 11978    Robert G. Crigler, Judge**

**No. M2014-00159-CCA-R3-PC – Filed June 5, 2015**

The Petitioner, Jason Christopher Underwood, appeals as of right from the Bedford County Circuit Court's denial of his petition for post-conviction relief. On appeal, the Petitioner contends that he received ineffective assistance of counsel based on initial counsel's failure to "provide adequate protections" for the Petitioner during his February 25, 2005 interview with the assistant district attorney general, pre-trial counsel's failure to pursue a motion to suppress statements from the aforementioned interview, and trial counsel's failure to object to admission of the February 25 statements at trial.[1] The Petitioner also requests that we revisit our holding on direct appeal that the trial court's denial of his request for a deoxyribonucleic acid ("DNA") expert was not error. Following our review, we conclude that the Petitioner's first issue is without merit, and his second and third issues have been waived because he raises them for the first time in this appeal. Also, we decline to revisit our earlier holding that the trial court did not err when it denied the Petitioner's motion requesting additional funds for a DNA expert. Accordingly, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Donna Orr Hargrove, District Public Defender; and Andrew Jackson Dearing III, Assistant District Public Defender (on appeal), for the appellant, Jason Christopher Underwood.

---

[1] In total, the Petitioner had three attorneys during the pre-trial and trial period. For clarity, we refer to his first attorney as "initial counsel," his second attorney as "pre-trial counsel," and the attorney who represented him during his jury trial as "trial counsel."

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Robert Carter, District Attorney General; and Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Following a jury trial, the Petitioner was convicted of two counts of first degree premeditated murder, for which he received two sentences of life imprisonment without the possibility of parole. This court affirmed the Petitioner's convictions and sentences on direct appeal. State v. Jason Christopher Underwood, No. M2006-01826-CCA-R3-CD, 2008 WL 5169573 (Tenn. Crim. App. Dec. 10, 2008).

The Petitioner's convictions stemmed from the brutal stabbing deaths of Anthony Baltimore and Rebecca Ray at their home in Shelbyville, Tennessee. Underwood, 2008 WL 5169573, at *1. The bodies of Mr. Baltimore and Ms. Ray were discovered by Mr. Baltimore's father and sister on October 25, 2004. Id. After learning that Mr. Baltimore's pickup truck was missing from the home, police began a search for the vehicle, which was eventually located at a local business. Id. at *4. There were blood stains on both the interior and exterior of the truck, as well as on the gravel outside the driver's side door. Id. at *5. Investigators used a bloodhound that performed human tracking to follow the scent of blood found in the truck. Id. at *6. The bloodhound tracked the scent through a wooded area, until finally stopping at a creek bed located approximately 100 yards from the Petitioner's grandmother's home. Id.

The medical examiner testified that Mr. Baltimore sustained forty-one stab wounds, while Ms. Ray sustained fifty-nine stab wounds. Id. at *4. Due to the violent nature of the crime, there was significant blood evidence at the scene. Id. at *3. In particular, investigators discovered blood and hair on the doorknob to the home's back door. Id. at *4. Later testing revealed that a fingerprint preserved in the blood on the doorknob was a match for the Petitioner's. Id. Investigators also observed a hand print preserved in blood on Ms. Ray's leg. Id. This hand print was compared to the Petitioner's latent palm print and was a match. Id. at *9. Finally, investigators noticed a single drop of blood on Ms. Ray's left thigh. Id. at *8. Investigators thought this was odd because, while most of the blood on Ms. Ray's body was smeared, this single drop of blood was not. Id. That drop of blood was preserved, and later testing revealed that it contained the Petitioner's DNA. Id.

After matching the bloody fingerprint on the back doorknob to the Petitioner, officers obtained warrants for the Petitioner's arrest. Id. at *9. When officers attempted

-2-

to arrest the Petitioner, he eluded the police, first in his car, and then on foot, before finally being apprehended. Id. The Petitioner was taken into custody on November 10, 2004; he was informed of his Miranda[2] rights and agreed to talk to police officers without the assistance of counsel. Id. at *10. Although he initially denied that he had ever been to the victims' home or that he knew them well, he eventually stated that he had gone to the home but that the victims were already injured upon his arrival. Id. Later in the interview, the Petitioner changed his story again, stating that he was doing drugs with the victims, that he got into a fight with the victims, and that he stabbed the victims "a couple of times" after they attacked him. Id.

Following his unsuccessful direct appeal, the Petitioner filed a pro se petition for post-conviction relief on December 2, 2009. In that petition, the Petitioner alleged that he received ineffective assistance of counsel; that the prosecutor committed prosecutorial misconduct; that the trial court committed various errors; and finally, that "[e]ven if . . . none of the errors at trial or on appeal considered individually violated his rights," the cumulative effects of these errors violated his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

On December 21, 2009, counsel was appointed, but the Petitioner's family later retained private counsel, who was substituted as counsel on May 17, 2010. Thereafter, a writ of error coram nobis[3] was filed on July 23, 2010, and an amended post-conviction petition was filed on July 26, 2010. As is pertinent to our review, the amended petition alleged that the Petitioner received ineffective assistance of counsel based upon the following grounds: initial counsel's failure to "properly qualify" the Petitioner's February 25, 2005 interview with police and the assistant district attorney; pre-trial counsel's failure to "properly pursue certain motions for monies for specialists/experts"; pre-trial counsel's decision to withdraw as counsel when trial counsel was hired to merely "assist" pre-trial counsel; trial counsel's failure to persuade the trial court to grant additional funds for "expert services"; and trial counsel's failure to pursue a Rule 11 appeal to the Tennessee Supreme Court. On September 24, 2010, the court held an evidentiary hearing[4] on both the post-conviction petition and writ of error coram nobis.[5]

---

[2] See Miranda v. Arizona, 384 U.S. 436 (1966).

[3] In his writ of error coram nobis, the Petitioner asserted that "certain evidence was not presented that would . . . exonerate [the Petitioner]." That evidence included "the identities of those individuals that actually committed the murders"; an explanation as to "how and why [the Petitioner's] handprint" was on Ms. Ray's thigh and his fingerprint on the home's backdoor; and evidence "substantiat[ing] why [the Petitioner] had no marks, lacerations, bruises, [or] cuts upon his person subsequent to what can only be described as a desperate struggle[.]"

[4] After several witnesses testified, the hearing was continued to November 15, 2010.

[5] We note that, in this appeal, the Petitioner only challenges the court's ruling on his post-conviction claims. Additionally, the Petitioner has abandoned some of the claims contained in his post-conviction

At the September 24 evidentiary hearing, initial counsel testified that she was retained to represent the Petitioner and that she represented him for a "relatively short" period of time. Initial counsel recalled a meeting with her client, police officers, and the assistant district attorney, although she could not recall the exact date of the meeting. When asked whether she "invoke[d] the protections of Rule 11" prior to the meeting, initial counsel responded, "No, I did not do that." She clarified that she did not ask for "immunity or some type of protection from any statements that could be used to prosecute him." She recalled that the interview was recorded.

Initial counsel testified that she eventually withdrew as counsel after the Petitioner's mother filed a complaint against her with the Board of Professional Responsibility ("BPR"). Initial counsel could not specifically recall the nature of the Petitioner's mother's complaints, although she did remember "some issues about fees [and] the tape with the [assistant district attorney]." She acknowledged that the BPR censured her, but she could not remember exactly what behavior formed the basis for that censure. She recalled that there was a tape of the interview, which she had given to her investigator and had never received back. She stated that, as of this evidentiary hearing, she still had not actually seen the tape herself. She agreed that as the Petitioner's counsel, it was her responsibility to keep up with discovery. Initial counsel testified that she turned the recording of the interview over to her investigator, along with the rest of the discovery file. According to initial counsel, the investigator she was working with had worked with other attorneys in the law firm's office and "had been diligent."

Initial counsel was then questioned about a statement she made in her response to the complaint filed with the BPR. According to post-conviction counsel, in her response to the BPR, initial counsel wrote, "There is no video (DVD) recording of a meeting between myself and the Bedford County District Attorney's Office on February 25, 2005 -- February 24, 2005; February 25, 2005, or any other date because such meeting did not occur." Counsel for the Petitioner asked her why she made "such a misstatement." Initial counsel responded that, "if [she] wrote that, that was what [she] believed at that time."

On cross-examination, initial counsel testified that after the Petitioner's mother filed the BPR complaint against her, she felt that she should withdraw from the case. She could not recall the specific date that the court allowed her to withdraw. Initial counsel testified that, at some point, she discussed the Petitioner's case with the district attorney general via telephone. To her knowledge, there was no recording of that phone call, and she testified that she may have been referring to that telephone call in her response to the BPR.

petition on appeal. We limit our recounting of the facts from the evidentiary hearings to those relevant to the instant appeal.

-4-

Initial counsel agreed that the purpose of the meeting with the Petitioner and the assistant district attorney and police was to give the Petitioner an opportunity to "tell the truth." According to initial counsel, she and the Petitioner discussed at length the crimes he was accused of committing, and the Petitioner steadfastly maintained his innocence. The Petitioner told initial counsel that he had been framed and that he knew who actually committed the murders but had previously given a false statement to the police "because he was afraid." Initial counsel testified that she believed that the Petitioner was actually innocent, and she therefore "thought it was important that maybe he should try to help himself if he wanted to tell the truth." Accordingly, she approached the district attorney's office and set up a meeting so that the Petitioner could tell his side of the story.

When initial counsel was asked whether she "asked [that the] interview be under the [R]ule 11, which is basically statements made during the course of a plea negotiation[s]," she first responded that she did not request such protections. However, she then elaborated, saying, "As I recall, I did try to do that. Now, that -- the more I think about it, the more I remember in the process. But I think I did talk to you. And you said, No." She added, "Then we finally came to some sort of an understanding. [The Petitioner] is going to tell the truth, and you will consider it. You'll investigate it, see if you can corroborate what he had to tell you." According to initial counsel, the Petitioner not only had information about the deaths of Ms. Ray and Mr. Baltimore but also knew details of other homicides. Initial counsel testified that the plan was to have the Petitioner share this information in order to "help himself when we got to plea negotiations." She testified that, during the interview with the Petitioner and the assistant district attorney, there were no discussions of a plea agreement.

On re-direct examination, initial counsel testified that she would not have set up the meeting with the assistant district attorney if she thought the Petitioner was going to make incriminating statements. She then clarified her earlier testimony that she had at some point asked for "protection" for the Petitioner during the February 25 interview, saying, "I didn't ask for protection for the statement. What I asked [the district attorney general] was to negotiate with me; if this information was helpful . . . the other information on the other homicides, what will [the Petitioner] get." According to initial counsel, the district attorney's office did not make any promises in exchange for the Petitioner's statement, but the Petitioner decided to give a statement anyway, and the assistant district attorney agreed to "check [the information] out."

Pre-trial counsel testified that he represented the Petitioner after initial counsel withdrew. Pre-trial counsel recalled watching the video of the Petitioner and initial counsel "making a proffer" with the assistant district attorney. Pre-trial counsel remembered filing a motion to suppress the Petitioner's statement from the February 25 interview, and he recalled that one of the bases for filing the motion was ineffective

assistance of counsel. In particular, pre-trial counsel expressed concern that initial counsel had scheduled the interview before receiving discovery from the district attorney's office. When asked whether he could "have put [the Petitioner] on the stand" in light of the February 25 statement, pre-trial counsel responded, "I don't know. I don't remember what was in the statement . . . . I just remember it was a problem." Pre-trial counsel opined that it was "almost always a bad idea" to allow a defendant to talk to the district attorney.

With respect to the motion to suppress the Petitioner's February 25 statement, pre-trial counsel recalled that he and trial counsel discussed the wisdom of proceeding with the motion. He testified that there was "some sort of posturing going on from [trial counsel], . . . some clever defense thinking" underlying the decision not to move forward with the motion to suppress, although he could not recall what that strategy was.

Trial counsel testified that the motion to suppress the February 25 statement was not pursued "[p]rimarily because it raised the issue of ineffective assistance of counsel, and that is generally frowned upon to raise that issue during the trial proceedings or on direct appeal." With respect to the Petitioner's February 25 interview with the assistant district attorney, trial counsel opined that it was "ineffective [for initial counsel] to schedule that meeting without trying to . . . have had those discussions covered under Rule 11 so that they would be protected under Rule [410]." According to trial counsel, initial counsel's failure to secure protections for the February 25 interview was "extremely troubling because [the Petitioner's statements] implicated him[] being there with other participants. . . ." He opined that, had the interview been characterized as an effort toward plea negotiations, the State would have been precluded for introducing the statement during its case-in-chief.

On cross-examination, trial counsel was questioned about the contents of the February 25 interview. Trial counsel recalled that in the interview, the Petitioner denied ever having touched Ms. Ray's body even though his palm print was found on her thigh. The Petitioner also claimed that he had no open wounds and, thus, concluded that he could not have left his own blood at the scene. Trial counsel was asked whether the Petitioner's February 25 statement was actually harmful in light of the fact that he did not make any incriminating statements but rather "said a lot of things that the scientific evidence was able to show was not true." Trial counsel agreed that there were "major inconsistencies" between statements made during the February 25 interview and the scientific evidence.

Trial counsel said that, with respect to initial counsel's performance, it would be "[i]neffective not to try" to have the interview "be under Rule 11." When reminded that initial counsel's testimony was that she did in fact make such a request to the district

attorney general but that the request was rejected, and the Petitioner nevertheless decided to participate in the interview, trial counsel said, "That is the gamble [defendants] take." Trial counsel admitted that he had never asked the assistant district attorney to consider an interview with a defendant as a "Rule 11 conversation," i.e., a statement in the course of plea negotiations.

The evidentiary hearing was continued to November 15, 2010, and the Petitioner testified on that date. The Petitioner's testimony essentially stated his claim that he was wrongfully convicted. He offered his side of the story and named individuals he believed were actually responsible for the murders of Ms. Ray and Mr. Baltimore. According to the Petitioner, he chose not to testify at his trial because he and his family were threatened by the actual perpetrators of the crime. He offered no testimony relevant to his ineffective assistance of counsel claims.

The post-conviction court orally denied relief on both the writ of error coram nobis and the petition for post-conviction relief. On January 14, 2011, the post-conviction court entered a detailed, written order outlining its factual findings and reasons for denying the Petitioner's post-conviction relief. As is pertinent to our review, the court noted that, although the Petitioner claimed that initial counsel failed to "qualify" his interview pursuant to Tennessee Rule of Criminal Procedure 11(d) and Tennessee Rule of Evidence 410, neither rule required an attorney to do so. Rather, the court continued that "[i]f there was ineffective assistance of counsel[,] it was in the failure to object at trial" because Rule 410 concerns the admissibility at trial of statements made in the course of plea negotiations. The post-conviction court concluded that, because there were no allegations that trial counsel was ineffective for failing to object to the introduction of the Petitioner's interview, the issue was without merit. The court further found that it was the Petitioner who insisted on the interview, "thinking either that he could talk his way out of the charges or that he could talk his way into a favorable settlement. While the meeting was unwise for the [Petitioner], he cannot successfully complain about getting an interview that he himself insisted upon." Finally, the post-conviction court concluded that while "this interview may have made his defense more difficult at trial, evidence of the [Petitioner's] guilt [was] overwhelming," and he had, therefore, suffered no prejudice.

Following the post-conviction court's denial of the Petitioner's claim for relief, post-conviction counsel failed to file an appeal to this court. On January 27, 2014, three years after the post-conviction court entered its order denying relief, the Petitioner filed a pro se motion to waive timely filing of the notice of appeal. The Petitioner alleged that post-conviction counsel had "assured [him] that [counsel] would be prosecuting/executing an appeal" to this court. However, when the Petitioner's family

contacted the clerk's office in "December 2013/January 2014" to check on the status of the Petitioner's appeal, they learned that no notice of appeal had ever been filed.

At the behest of this court, post-conviction counsel explained via letter why a notice of appeal had not been timely filed. Post-conviction counsel clarified that he was not court-appointed but, rather, was retained to represent the Petitioner. Counsel alleged that he was hired only to represent the Petitioner in his post-conviction proceeding but was not contractually obligated to represent the Petitioner on appeal. According to counsel, neither the Petitioner nor any member of his family ever contacted him to discuss a filing of the notice of appeal. Because his contract with the Petitioner explicitly limited his representation to post-conviction proceedings and not an appeal, counsel felt it unnecessary to file a notice to withdraw as counsel. Nevertheless, post-conviction counsel acknowledged that, to the extent he should have followed up with the Petitioner and clarified the actions that needed to be taken in order to file a notice of appeal, it was his fault, and not the Petitioner's, that the notice of appeal was never filed. On March 7, 2014, this court filed an order granting the Petitioner's motion to waive the thirty-day deadline for filing a notice of appeal in this case. See Tenn. R. App. P. 4(a).

ANALYSIS

On appeal, the Petitioner contends that he received ineffective assistance of counsel based on initial counsel's failure to "provide adequate protections" for his February 25 interview. He further alleges that pre-trial counsel was ineffective by failing to pursue a motion to suppress the February 25 interview, and trial counsel was ineffective for failing to object to the admission of that interview at trial. Finally, the Petitioner asks us to revisit our previous holding that the trial court did not err by failing to grant additional funds for DNA testing. The State responds that the Petitioner cannot show that he suffered prejudice from initial counsel's handling of the February 25 interview because a copy of that interview was not made a part of the record in the instant appeal or on direct appeal. The State further responds that neither pre-trial nor trial counsel were ineffective for failing to pursue a motion to suppress the Petitioner's February 25 statements and asserts that, because there was overwhelming evidence of guilt, the Petitioner has failed to prove that he was prejudiced by the introduction of the statement. Finally, the State asserts that "a court of competent jurisdiction" has already determined that the trial court did not err in denying the Petitioner's motion requesting funding for a DNA expert and that the issue is therefore waived.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal defendants are constitutionally guaranteed the right to effective assistance of

counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Tennessee Rule of Criminal Procedure 11(d) states that "[t]he admissibility of a plea, plea discussion, or any related statement is governed by Tennessee Rule of Evidence 410." Rule 410 states, in relevant part, that "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty" is not admissible in any civil or criminal proceeding "against the party who made the plea or was a participant in the plea discussions."

Initially, we note that initial counsel testified that the February 25 interview was not conducted as a part of plea negotiations. Rather, the Petitioner alleged that he was innocent and wished to provide the names of those whom he claimed were actually

responsible for the murders. Nevertheless, assuming Tennessee Rule of Evidence 410 was implicated, we agree with the post-conviction court that any alleged error would be trial counsel's failure to object to introduction of the statement at trial. Rule 410 does not require that attorneys "qualify" an interview before a defendant speaks to prosecutors. Rather, Rule 410 operates to make any statements made in the course of plea negotiations inadmissible against defendants at trial. Therefore, the proper course would have been for trial counsel to object to the introduction of the interview at trial. It may have been unwise for initial counsel to allow the Petitioner to speak with the assistant district attorney, but initial counsel testified that she believed the Petitioner was innocent and that the purpose of the interview was to allow the Petitioner to provide information that would allow the police to further investigate the murders.

Assuming, arguendo, that initial counsel was deficient for arranging the Petitioner's February 25 interview, the Petitioner has failed to prove that he was prejudiced by the introduction of his statements from that interview. First, no transcript of the interview was included on direct appeal or in the instant appeal. Trial counsel testified that, to his recollection, the interview consisted of the Petitioner essentially denying that he was involved in the crimes and questioning the accuracy of the DNA results linking him to the crime scene. Even without the introduction of these statements, the Petitioner had previously given contradictory accounts in his November 10, 2004 interview with police regarding his participation in the murders of Ms. Ray and Mr. Baltimore, and it is therefore unlikely that his credibility was significantly affected by the introduction of his February 25 statements. Because the Petitioner has failed to prove that he was prejudiced by the February 25 interview or introduction of his statements therein at trial, this issue is without merit.

With respect to his claim that pre-trial counsel was ineffective for failing to pursue a motion to suppress, we conclude that the Petitioner has waived review of the issue. Although the Petitioner did question pre-trial and trial counsel at the post-conviction hearing about the decision to table the motion to suppress, the Petitioner failed to state this issue in any prior petitions to the court. Tennessee Code Annotated section 40-30-110(c) provides that "[p]roof upon the petitioner's claim or claims for relief shall be limited to evidence of the allegations of fact in the petition." Further, section 40-30-106 states, in relevant part, that

> (d) The petition must contain a clear and specific statement of all grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. . . .
>
> (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a

-10-

court of competent jurisdiction in which the ground could have been
presented[.]

Tenn. Code Ann. § 40-30-106(d), (g). There is a rebuttable presumption that a ground for relief not raised before a court of competent jurisdiction in which the ground could have been presented is waived. Id. at 40-30-110(f). Because this issue was not addressed in the order denying post-conviction relief and the Petitioner cites no authority or any meaningful argument in this section of his brief on appeal, we cannot conclude that he has presented sufficient evidence to overcome the presumption of waiver. Accordingly, review of this issue is waived.

Briefly, we note that the Petitioner also makes a conclusory allegation in his brief that trial counsel's failure to object to the introduction of his statements from the February 25 interview constituted ineffective assistance of counsel. Again, the Petitioner advances this argument for the first time on appeal, and the issue is, accordingly, waived.

Finally, despite being "well aware of the opinion issued by this court" on direct appeal, the Petitioner asks that we reconsider our previous holding that the trial court did not abuse its discretion in denying the Petitioner's motion requesting funds for a DNA expert. It is fundamental that a post-conviction proceeding "may not be employed to raise and relitigate or review questions decided and disposed of in a direct appeal . . . ." Gant v. State, 507 S.W.2d 133, 137 (Tenn. Crim. App. 1973). Accordingly, we decline the Petitioner's request to revisit this issue in the instant appeal.

<u>CONCLUSION</u>

Based on the foregoing and the record as a whole, we affirm the judgment of the post-conviction court.

_____
D. KELLY THOMAS, JR., JUDGE